Edward M. O’Gorman, J.
This is an application to remove a body from a cemetery plot containing eight graves. The original owner of the plot, Frank Gross, Sr., is now deceased. Prior to his death, at his direction there was interred therein the body of one Mabel Geddes, a friend.
There are at present two unused graves remaining in the Gross plot, five members of the Gross family having heretofore been buried therein.
The petitioners in this proceeding are the widow of the said Frank Gross, Sr., the original owner of the plot, and his *276 son and daughter. They have set forth in their petition their desire to be buried in the family plot. Inasmuch as only two graves remain therein, they petition for the right to disinter the said Mabel Geddes and to reinter her in another suitable site in the same cemetery.
Such an application is governed by the provisions of section 89 of the Membership Corporations Law, which provides as follows: “A body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient. Notice of application for such permission must be given, at least eight days prior thereto, personally, or, at least sixteen days prior thereto, by mail, to the corporation or to the persons not consenting, and to every other person or corporation on whom service of notice may be required by the court.”'
At present, the title to the cemetery plot in question is vested in the petitioners, pursuant to the provisions of section 84 of the Membership Corporations Law. Pursuant to the provisions of section 89, the petitioners have applied to the Chester Cemetery Association for permission to disinter the body of the said Mabel Geddes, but were unable to obtain such permission, and in default thereof, pursuant to the statute, application is now made to this court, in its discretion, for the right to remove the said body from the said cemetery plot.
The application is unopposed. The petition sets forth in this connection that petitioners have been unable to locate any next of kin or legal representative of the deceased Mabel Geddes after a diligent search.
There is not here involved the question, sometimes the subject of litigation, of the widow’s right to be buried in the cemetery plot owned by her deceased husband, nor is there involved in this case the widow’s right to remove the body of the decedent to another cemetery plot. In this case, in view of the fact that two graves remain available in the plot in question, the widow’s personal right to be buried in the family plot has not and cannot be defeated. (See Membership Corporations Law, § 84.) The application therefore presents a novel question.
*277 There are few precedents in which the scope of the right to disinter has been defined by the courts. Cases in which the right to disinter a body has come before the courts have generally fallen into the following few categories:
1. In one such category are cases in which members of a decedent’s family seek to remove his body from a cemetery plot furnished by a benevolent association to the family plot. In most such cases, the courts have sanctioned disinterment, on the principle that it is in accord with normal human desires that members of a family be buried together and that the removal and reinterment in .the family plot would be in accord with the decedent’s own wishes. (See Matter of Schechtier, 261 App. Div. 926; Matter of Katz, 167 Misc. 301; Matter of Bobrowsky, 266 App. Div. 849.)
2. Another category involves cases in which the courts have been called upon to decide between members of the same family in determining the place of interment or reinterment of a decedent’s remains. Here again the inquiry is directed toward carrying out the presumed wishes of the deceased. (See Matter of Winters, 165 Misc. 226; Matter of Ackermann, 124 App. Div. 684; Matter of Teitman v. Elmwier Cemetery Assn., 3 Misc 2d 143.)
3. A third category includes cases in which a cemetery association seeks to prevent decedent’s disinterment for the purposes of reburial with other members of his family on the grounds of religious usage and custom. In those cases, the courts have often sanctioned the disinterment, giving greater weight to the desire of members of the same family to be buried together, which was presumed to be in accord with the wishes of the decedent. (See Matter of Hubbard v. St. Joseph’s Cemetery, 47 Misc 2d 315; Matter of Plancher, 37 N. Y. S. 2d 87; Matter of Davis, 21 Misc 2d 825; Matter of Sherman, 107 N. Y. S. 2d 905, affd. 279 App. Div. 872, affd. 304 N. Y. 745.)
The instant case does not fall in any of the foregoing categories. Having due regard to the principles which animated the cases supra, we must search further for the proper principle to apply to this case. As was stated by the court in Matter of Currier (300 N. Y. 162, 164): “ The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. * * * While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a ‘ benevolent discretion ’, will be sensitive ‘ to all those prompt *278 ings and emotions that men and women hold for sacred in the disposition of their dead (Yome v. Gorman, 242 N. Y. [395], 402.) And looming large among the factors to be weighed are the wishes of the decedent himself. ’ ’
In the case at bar, the fact “ looms large ” that the decedent Frank Gross, Sr. had certain wishes in connection with the burial place of his friend, and we now have the benefit of the unequivocal expression of those wishes by the action of the decedent himself during his lifetime, when he interred the remains of his friend in his cemetery plot.
Though there is now no one available to speak for the decedent, and no one to oppose the application on behalf of the deceased Mabel Geddes, this clear expression of the decedent’s wish is not overridden by the natural and commendable desire of the surviving members of the family to be buried together. For if, as provided by statute (§ 84, subd. 7), the decedent could in his lifetime have designated in writing the names of those to be buried in his plot, even after his death, then certainly it is in accordance with the statutory scheme that the decedent have the power to accomplish the same objective, by his unequivocal act during his lifetime of interring the remains of his friend in his cemetery plot.
Much as it is to be desired that the wishes of this family to be buried together be carried out, I am constrained by custom and the declared policies of our courts to refrain from frustrating the wishes of the decedent by disturbing the remains of his friend.
The application is denied